UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO: _____

ANDRE OW BULAND,

    Plaintiff,
vs.

NCL (BAHAMAS) LTD., A
BERMUDA COMPANY d/b/a
Norwegian Cruise Line,

    Defendant.
_____/

**COMPLAINT**

    COMES NOW the Plaintiff, ANDRE OW BULAND, by and through undersigned counsel and sues the Defendant, NCL (BAHAMAS) LTD. A BERMUDA COMPANY d/b/a Norwegian Cruise Line, and alleges as follows:

GENERAL ALLEGATIONS

1.    That this is an action for damages which exceeds Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to *28 USC §1332*.

2.    That this court has initial jurisdiction pursuant to *28 USC §1333* and the General Maritime Laws of the United States.

3.    That at all times material the Plaintiff, ANDRE OW BULAND, was a citizen and resident of the Country of Trinidad and Tobago.

4.    That at all times material, the Defendant, NCL, had a principal place of business in Miami-Dade County, Florida and at all times was the owner/operator of the vessel *NORWEGIAN PEARL*.

5. That on or about November 14th, 2016, the Plaintiff was a passenger on a cruise on NCL's vessel, *NORWEGIAN PEARL*.

6. That on or about November 14th, 2016, the Plaintiff began to experience chest discomfort and nausea.

7. That on November 15th, 2016, the symptoms continued and the Plaintiff presented himself to the ship's infirmary. After conducting an examination and various testing, it was determined that the Plaintiff may have suffered a minor cardiac infarction of the inferior wall.

8. That the Plaintiff was kept in the infirmary and treated up until the time the ship docked in Miami two days later on November 17th, 2016.

9. That the entire time that the Plaintiff was in the ship's infirmary, he and his wife continuously informed the medical personnel that they had adequate insurance and that, if it was determined to be medically necessary, they could be transferred off the vessel to a landside hospital.

10. Notwithstanding the foregoing, the Plaintiff was assured by ship's medical personnel that the heart attack was very minor and that Mr. Ow Buland would be okay to remain on the vessel until it docked in Miami.

11. That when the vessel docked in Miami, the Plaintiff was transferred by ambulance to Mt. Sinai Hospital in Miami Beach. That upon arrival at Mt. Sinai, the Plaintiff was in cardiogenic shock. The Plaintiff was hospitalized and was required to undergo an emergency procedure involving the implantation of 4 stents. The Plaintiff was required to be hospitalized in the critical care unit for 5 days on a balloon pump and life support.

12. Since the initial hospitalization, the Plaintiff has returned to Miami for follow up and was diagnosed as having suffered severe damage to the heart. As a result of the damage, including a very low ejection fraction, he was required to undergo a surgical procedure to place a defibrillator in his chest.

13. That the Plaintiff has suffered severe and permanent damages as will be more fully hereafter described.

14. That at all times material, the Defendant, NCL, and its shipboard employees, agents and/or apparent agents owed a duty to the Plaintiff to provide prompt and appropriate medical care as regards the symptoms which the Plaintiff presented to the Defendant.

15. That the Defendant, NCL, by and through its employees, including the ship's physicians, breached the duty of care which it owed to the Plaintiff and was negligent in one or more of the following manner:

    (a) The Defendant failed to properly assess the condition of the Plaintiff, Andre Ow Buland;

    (b) That after making a diagnosis of myocardial infarction, the ship's physician and medical personnel failed to take the appropriate action to treat the Plaintiff while he was on the vessel;

    (c) That the Defendant, NCL, by and through its medical personnel failed to adequately use diagnostic equipment to appropriately assess the Plaintiff's condition;

    (d) That the Defendant, NCL, by and through its medical personnel failed to obtain appropriate consultation with land-based specialists;

    (e) That the Defendant, NCL, failed to make the proper medical decision to promptly evacuate the Plaintiff from the vessel to a shoreside hospital in a timely manner for treatment of his heart attack.

16. That as a direct and proximate result of the negligence of the Defendant as described above, the Plaintiff suffered extensive damage to his heart, which is permanent, and will require ongoing treatment in the future. That as a further result of the Defendant's negligence, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of

capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of capacity to earn money, and aggravation of a known or unknown previously existing condition.  The losses are either permanent or continuing in nature and the Plaintiff will continue to suffer the losses in the future.

### COUNT I:   ACTUAL AGENCY

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through 16 as though fully set forth herein, and further alleges as follows:

17. That at all times material, the ship's physician(s) and other medical personnel who treated the Plaintiff were direct employees and/or actual agents of the Defendant, NCL, and were acting within the scope and course of their employment with NCL when treating the Plaintiff.

18. That the employment relationship existed as a result of a written agreement, which provided that NCL had control over the duties and practice of the ship's physician(s).

19. That the control which created the employment relationship included, but was not necessarily limited to the following:

(a) That NCL had the duty to hire and fire the shipboard physician;

(b) That NCL had the power to determine the working hours of the ship's physician and other medical personnel;

(c) That NCL had the right to transfer its physician and other medical personnel to and from any of its vessels at its discretion;

(d) That while under contract to NCL, the physician was not permitted to practice medicine either on his own or for any other entity;

(e) That the physician conducted his practice onboard the vessel and within the medical center, which was provided by NCL, including all equipment and medicines.

20. That the Plaintiff was charged for medical services as determined by NCL.  None of the

charges made to the Plaintiff were received by the ship's doctor, who instead was paid a salary by NCL as its employee.

### COUNT II: NEGLIGENE OF NCL BASED UPON APPARENT AGENCY

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through 16 as though fully set forth herein, and further alleges as follows:

21. That at all times material, the Defendant, NCL, held out its medical staff, including its doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel. That the Defendant, NCL, promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel. That NCL held out its staff, including ship's physician's and medical personnel as being direct employees or its actual agents.

22. That the Defendant, NCL, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

23. That NCL manifested to the Plaintiff in this case that its medical staff, including its shipboard doctors and nurses were acting as its employees and/or actual agents in various ways, including but not limited to the following:

   (a) the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

   (b) that the "medical centers" are owned and operated by NCL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

   (c) that the passenger is billed directly by NCL through the passengers' Sign and Sail Card, whereas the "medical staff", including the doctor and nurse, are paid salaries by NCL to work in the "medical centers".

24. That the medical staff in this case, including its shipboard physicians and nurses, were given uniforms to wear which include name tags, and which have the NCL name and logo. Said uniforms were required by NCL to be worn by the doctor and nurse.

25. That the doctor is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

26. That both the ship's doctor and the nurse were held out to the passengers by NCL as being members of the ship's crew.

27. That the Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

28. That the cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

29. That both the ship's doctor and nurse are permitted to eat with the ship's crew.

30. That the ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff was required to go to the ship's medical center to be seen for his symptoms.

31. That at the time of Plaintiff's injury, the Plaintiff was seen and examined by the ship's nurse and/or physician.

32. That based on the foregoing, the Plaintiff believed, and was reasonable in his belief, that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendant, and was never given any reason to believe otherwise.

33. That the Plaintiff relied to his detriment on his belief that the ship's physicians and nurses were direct employees or actual agents of the Defendant in that the Plaintiff did not insist on evacuation from the vessel because he believed NCL physician that he had only sustained "a minor heart attack" and that his condition would not deteriorate if he remained on the vessel until it reached the port in Miami. The Plaintiff would not have followed the advice of the ship's

physician if he had known that he was not actually the agent of NCL.

34.     That as a result of the Plaintiff's reliance upon NCL's medical staff, the Plaintiff's status was not properly diagnosed and/or managed, including evacuation from the vessel, and, as a result, the Plaintiff's condition severely deteriorated and he has now sustained serious and permanent damage to his heart as hereinbefore described.

35.     That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff, ANDRE OW BULAND, demands judgment against the Defendant, NCL, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

Dated:   November 14, 2017

        WAKS & BARNETT, P.A.
        Counsel for Plaintiff
        waksbar@aol.com
        9900 SW 107th Ave., #101
        Miami, FL   33176
        Tel: (305) 271-8282
        Fax: (305) 595-9776

        By:   /s/ *Andrew L. Waks*
            ANDREW L. WAKS
            Florida Bar No.: 241350